# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMES PATRICK O'BRIEN, | ) |
| | ) |
| Plaintiff, | ) No. 18 C 0007 |
| | ) |
| v. | ) Magistrate Judge M. David Weisman |
| | ) |
| NANCY A. BERRYHILL, Deputy | ) |
| Commissioner for Operations, | ) |
| performing the duties and functions | ) |
| not reserved to the Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

James Patrick O'Brien brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Social Security Administration's ("SSA's") decision denying his application for benefits. For the reasons set forth below, the Court affirms the SSA's decision.

## Background

Plaintiff applied for benefits on June 3, 2014, alleging a closed period of disability from January 31, 2014 to August 7, 2015. (R. 21, 37-38, 82, 232.) His application was initially denied on September 9, 2014, and again on reconsideration on January 9, 2015. (R. 82, 110.) Plaintiff requested a hearing, which was held by an Administrative Law Judge ("ALJ") on September 13, 2016. (R. 34-59.) On December 28, 2016, the ALJ issued a decision finding plaintiff not disabled. (R. 21-28.) The Appeals Council declined to review the decision (R. 1-3), leaving the ALJ's decision as the final decision of the SSA, reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

**Discussion**

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Although this standard is generous, it is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The SSA must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity to perform his past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four. 20 C.F.R. § 404.1560(c)(2); *Zurawski*, 245 F.3d at 886. If that burden is met, at step five, the burden shifts to the SSA to establish that the claimant is capable of performing work existing in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that plaintiff did not engage in substantial gainful activity from January 31, 2014 through August 7, 2015. (R. 23.) At step two, the ALJ determined that, during that period, plaintiff had the severe impairments of "major depressive disorder; a bipolar disorder; and a substance addiction disorder." (*Id.*) At step three, the ALJ found that, during that period, plaintiff's impairments did not meet or medically equal the severity of a listed impairment. (R. 24.) At step four, the ALJ found that, during that period, plaintiff had the RFC to perform his past relevant work, and thus he was not disabled. (R. 28.)

Plaintiff contends that the ALJ erred in concluding that plaintiff did not, during the relevant period, meet or medically equal listing 12.04 for affective disorders. At the time of the ALJ's decision, that listing required, among other things, that the claimant's disorder cause at least two of the following: marked restriction of activities of daily living; marked restriction in maintaining social functioning; marked difficulty in maintaining concentration, persistence or pace; or "repeated episodes of decompensation, each of extended duration," *i.e.*, "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *See* 20 CFR pt. 404, subpt. P, App'x 1, Listings 12.00, 12.04 (eff. to Jan. 16, 2017). The ALJ said plaintiff was mildly restricted in his activities of daily living, moderately restricted in social functioning and maintaining concentration, persistence, or pace and "ha[s] experienced no episodes of decompensation, which have been of extended duration." (R. 24.)

As plaintiff points out, the record shows that plaintiff had two lengthy psychiatric hospitalizations in early 2014. (*See* Pl.'s Mem. Supp. Mot. Summ. J., ECF 12 at 6-7; R. 383, 523, 1175.) So, the ALJ's statement that plaintiff experienced no extended episodes of decompensation is dubious, and for purposes of our analysis, we consider the ALJ's conclusion error.[1] The error

---

[1] There is no question that plaintiff had two extended hospitalizations during the relevant time. (R. 26-27.) As defendant points out, the two state agency psychologists noted that plaintiff had no repeated episodes of

is harmless, however, because there is no evidence that plaintiff had a third extended episode of decompensation in the relevant period, as was required to meet listing 12.04. *See Keys v. Barnhart*, 347 F.3d 990, 994 (7th Cir. 2003) (stating that "the doctrine of harmless error . . . is fully applicable to judicial review of administrative decisions").

Moreover, the ALJ's conclusion that plaintiff was not markedly restricted in activities of daily living, maintaining social functioning, or maintaining concentration, persistence, or pace is supported by substantial evidence. The record shows that, after April 30, 2014, when he was discharged from the second hospital stay, plaintiff consistently reported that he was much improved and his mood was good. (*See e.g.*, R. 406 (5/16/14 treatment note stating that plaintiff said he was "feeling well," "sleeping well," and had a "good mood"); R. 402 (treater's note of 5/29/14 phone call with plaintiff in which plaintiff said, "I have it under control"); R. 399 (6/25/14 treatment note stating that plaintiff "describes his current mood, sleep, and general functioning as entirely satisfactory"); R. 398 (8/6/14 treatment note stating that plaintiff "describes his current mood, sleep and general functioning as very satisfactory"); R. 392-93 (10/23/14 treatment note stating that plaintiff has been doing "fairly well with a few down days . . . [that] pass"); R. 978 (12/12/14 treatment note stating that plaintiff's mood is "good in general," he has "some low moments, but no persistent depression")) (internal quotation marks omitted). In the face of this evidence, and plaintiff's failure to identify anything in the record that contradicts it, the Court finds no error in the ALJ's conclusion that plaintiff did not meet or equal listing 12.04.

---

decompensation. (R. 64, 90.) Yet, the ALJ does not explain why she wholly discounted two hospitalizations. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) ("In addition to relying on substantial evidence, the ALJ must also explain [her] analysis of the evidence with enough detail and clarity to permit meaningful appellate review."). Because the ALJ failed to explain her reasoning, we consider her conclusion on this point to be erroneous.

Plaintiff also takes issue with the ALJ's determination that plaintiff can perform "simple work of routine type" (R. 25), which he says is precluded by his memory problems. (Pl.'s Mem. Supp. Mot. Summ. J., ECF 12 at 7-8.) The record does not support this assertion. Plaintiff testified that the electroconvulsive therapy ("ECT") he received in April and May 2014 affected his memory but only for a "very brief period" in the "spring and summer of 2014." (R. 44-45; *see* R. 50 (plaintiff testifying that "the memory loss is there for that short period"); R. 51 (plaintiff answering, "I don't know," when asked whether any memory problem would have prevented him from working "for the rest of 2014 and into the early part of 2015.").) Further, the notes from medical treatment he received in and after the summer of 2014 do not evidence significant deficits in memory or concentration. (*See e.g.*, R. 996 (6/25/14 treatment note stating that plaintiff's memory "seems adequate"); R. 995 (8/6/14 treatment note stating that plaintiff was "[o]riented x 3; short-term memory, attention, concentration, language functions unchanged from previous testing"); R. 989-92 (10/23/14 treatment note stating that plaintiff "feels that concentration is better" and "wonders if memory has been affected by ECT" but finding that plaintiff's memory was "grossly intact"); R. 978-80 (12/12/14 treatment note stating that plaintiff's "[c]oncentration and ability to focus remains good most of the time" and finding that his memory was "grossly intact").)

Alternatively, plaintiff argues that the RFC is flawed because it limits his contact with the general public but not with co-workers. (*See* R. 25 "[Plaintiff] may only engage in brief and superficial contact with the general public.").) That might be a problem if the limitation on plaintiff's interaction with strangers were supported by the record, but it is not. The ALJ noted that plaintiff "does well with friends and family," has "good relationships with his mother, siblings, nephews, and nieces" and is "described as cooperative [and] calm," assertions that are supported

by the record. (R. 24.) The ALJ added, however, that "[t]here is no indication . . . that [plaintiff] would fair [sic] as well with strangers." (*Id.*) The ALJ cited no evidence to support that assertion, and the Court has found none. Because there is no basis in the record for limiting plaintiff's contact with other people, the fact that the RFC does not limit plaintiff's contact with co-workers is not error.

Plaintiff's last argument is that the ALJ improperly rejected his testimony that he was unable to work during the relevant period. (Pl.'s Mem. Supp. Mot. Summ. J., ECF 12 at 9 (citing R. 41).) As an initial matter, plaintiff did not testify that he was unable to work for the entire period of January 31, 2014 to August 7, 2015. Rather, he said he could not have worked "for an extended period of months" while he was hospitalized and taking ECT treatments. (R. 41-42.) Second, as discussed above, the evidence shows that after the ECT treatments ended in May 2014, plaintiff consistently reported that his mood and concentration were fine. Third, plaintiff testified that, during the relevant period, he attended to his own activities of daily living, was able to drive, went to the library to read and use a computer, and after the ECT treatments, was "making an effort to get back into school." (R. 42-44, 51-52.) There is no evidence, including plaintiff's own testimony, that suggests his mental impairments made him unable to work for the entire eighteen-month period for which he seeks benefits. In short, the ALJ's conclusion that plaintiff is not entitled to benefits for that period is supported by substantial evidence.[2]

---

[2] Because the evidence in the record enabled the ALJ to make the disability determination, her failure to obtain a medical expert was not error, as plaintiff argues. *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (per curiam) (stating that an ALJ must obtain a medical expert "only when the evidence received is inadequate to determine whether the claimant is disabled").

## **Conclusion**

For the reasons set forth above, the Court denies plaintiff's motion for summary judgment [11], grants the SSA's motion for summary judgment [19], and affirms the SSA's decision.

**SO ORDERED.**               **ENTERED:** September 10, 2018

_____
**M. David Weisman**
**United States Magistrate Judge**